# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-6163-HUNT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RICHARD HARRIS,

    Defendant.
_____

## DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on March 26, 2021, a hearing was held to determine whether the Defendant Richard Harris should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the Defendant's appearance at trial or the safety of any other person and the community. Therefore, it is hereby ordered that the Defendant Richard Harris be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. **18 U.S.C. § 3142(g)(1) -- Nature and Circumstances of the Offense.** The Defendant is charged by way of an indictment out of the District of Columbia with Assaulting, Resisting or Impeding an Officer; Obstructing an Official Proceeding; Entering and Remaining in a Restricted Building; and Disorderly Conduct in a Restricted Building/Capitol Building, in violation of 18 U.S.C. §§ 111(a)(1), 1512(c)(2), 1752(a)(1) and (2), and 40 U.S.C § 5104(e)(2)(D). The assault charge carries a maximum penalty

of eight years in prison. The obstruction charge carries a maximum of twenty years' imprisonment. These two counts are felonies; the other charges are misdemeanors. There is no presumption in this case, nor is it a case involving one of the listed offenses normally considered appropriate for a detention request. Rather, the Government seeks detention under 18 U.S.C. § 3142(f)(2)(A) and (B), arguing that Harris poses a serious risk of flight and a serious risk of obstruction or witness threats or intimidation. The Government estimates that Defendant's guideline imprisonment range would be 15-21 months after trial. 18 U.S.C. § 3142(e)(3)(D).

This prosecution arises out of the Capitol Riot on January 6, 2021, in Washington D.C. The background regarding this event is generally known. In a memorandum opinion entered on February 26, 2021, filed as an exhibit in this case (ECF No. 7), Chief Judge Howell of the District Columbia offered some guidance for judges considering release or detention in cases involving the events at the Capitol on January 6, 2021. With respect to consideration of the nature and circumstances of the offense, Chief Judge Howell suggested certain "guideposts," including: 1) whether the charged offenses are felonies or misdemeanors; 2) whether the defendant engaged in prior planning, for example, by bringing a dangerous weapon; 3) whether the defendant coordinated with others and acted deliberately in such a way as to amplify or assure the success of the breach of the Capitol; 4) whether the defendant assumed either a formal or de facto leadership role in the assault, for example, by urging rioters to advance or confronting law enforcement; 5) whether the defendant breached the interior of the Capitol building; 6) whether the defendant injured, attempted to injure or threatened to

injure others or damaged federal property; and 7) whether the defendant actively threatened or confronted federal officials or law enforcement or otherwise promoted efforts to disrupt the electoral vote certification, thereby encouraging others to engage in such conduct. *United States v. William Chrestman*, Case No. 21-mj-218 (ZMF), 2021 WL 765662 at *14-16 (D.D.C. February 26, 2021). These factors, according to Judge Howell, "measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *Id.* at *16. The undersigned addresses some of these considerations below.

    2. **18 U.S.C. § 3142(g)(2) -- Weight of the Evidence**. The weight of the evidence against this Defendant is strong. At the hearing, the Government proceeded by way of proffer, with FBI Special Agent Michael McGillicuddy then made available for cross-examination.

    The evidence shows that Defendant was on the leading edge of a group that successfully breached a manned barrier inside the Capitol building on January 6, 2021. A still photograph (from a video) clearly shows Defendant, unmasked and with his arm upraised, addressing a masked, uniformed police officer. The Government proffered that Defendant told the officer that the police were outnumbered, that there are "a f***ing million of us out there," and that they were "listening to Trump." The Government proffered that the officer feared for his safety and stepped aside, allowing the mob to enter the interior. A second photograph showed Defendant holding a

telephone inside the Capitol. Aware that he was being filmed, Defendant then spoke into the phone, asking where Speaker of the House Nancy Pelosi was, adding, "We're coming for you, you b***h!" He also asked where Vice President Mike Pence was, stating, "We're coming for you too, you f***ing traitor!" A third photograph shows Defendant on a pedestal inside the Capitol, posing with his arm around a bronze statue of former President Gerald Ford. The statue is wearing a red MAGA hat and has a Trump flag tucked beneath its arm. In addition to the photographs filed as exhibits, Defendant appears in at least 19 videos or photographs taken by Capitol security cameras in and around the Capitol building during the Riot. Cell site data also places Defendant in the Capitol at the time of the Riots.

Law enforcement was able to identify Defendant shortly after the Riot, on January 7 or 8, 2021. Since that time, Defendant has traveled by car through eight different states, from Arizona to Florida. During this time, wanted posters and BOLOs were posted around the country and on the FBI website. Several people contacted the FBI and identified the man in the photographs as Defendant. An FBI agent called a cell number known to belong to Defendant and left a message advising him that he was wanted by the FBI and asking him to contact law enforcement. Defendant, who had this cell phone in his possession when arrested, did not contact the FBI. Defendant made no post-arrest statements. 18 U.S.C. § 3142(g)(2).

3. **18 U.S.C. § 3142(g)(3) -- History and Characteristics of the Defendant.** Richard Harris was born in 1980 in Cherry Hill, New Jersey. For the last ten weeks he has been living out of his car. He has been in Florida for about two weeks.

Previously, he lived with his father in Happy Valley, Oregon, for about six months, living out of his car at first but later moving into the residence for about two months. Before that, Defendant states that he lived in California, but provided no additional information. Defendant's father lives in Oregon. He owns a home there and appeared at the hearing via Zoom, indicating his willingness to cosign a bond. Defendant's mother is deceased. Defendant has one sibling, but Defendant does not know where he lives. He reports previously being married for ten years and has six-month-old twins from another relationship. Defendant graduated high school in California. He has been unemployed since March 2020, previously working as a delivery driver for Whole Foods/Amazon. He has been living off savings and credit cards. He reports being in excellent physical health and has no history of mental health problems. He reports occasional CBD use and has no history of substance abuse treatment. He has a 2000 conviction for sale of marijuana, but the conviction was later set aside. 18 U.S.C. § 3142(g)(3)(A) and (B).

4. **18 U.S.C. § 3142(g)(4) -- Danger to any Person or the Community.** Based on Defendant's conduct on January 6, 2021, which included breaching the Capitol interior, confronting and ultimately convincing an officer to stand aside out of fear for his safety, and specifically threatening that the mob was "coming for" the Speaker of the House and the Vice President of the United States, the presiding officers of the disrupted proceedings, the undersigned finds that Defendant poses a danger to the community, and also a threat to obstruct justice and to threaten or intimidate prospective witnesses. Based on his lack of ties to this district or the receiving district, together with the fact that he has spent the last ten weeks living out of his car, traveling through eight different states

while apparently aware that he was wanted for these offenses, the undersigned finds that Defendant also presents a serious risk of flight. 18 U.S.C. § 3142(g)(4).

      5. Based upon the above findings of fact, which were supported by the appropriate evidentiary standards (clear and convincing for danger to the community; preponderance for risk of flight), this Court specifically finds that there are no conditions or combination of conditions which reasonably will assure the Defendant's appearance as required or the safety of any other person and the community. 18 U.S.C. § 3142(e).

      The Court hereby directs:

      (a) That the Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

      (b) That the Defendant be afforded reasonable opportunity for private consultation with counsel; and

      (c) That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

      DONE AND ORDERED at Fort Lauderdale, Florida, this 30th day of March, 2021.

      _____
      PATRICK M. HUNT
      UNITED STATES MAGISTRATE JUDGE

Copies to:   All counsel of record