## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 21-CR-189 (CJN)** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD HARRIS,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S BOND REVIEW MOTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's Motion for Bond Review (Doc. 9).   As demonstrated below, the defendant should remain detained pending trial under 18 U.S.C. § 3142 (f)(2)(A) and (B) (Serious Risk of Flight and Serious Risk of Obstruction of Justice).

## Introduction

Defendant Richard Harris is presently charged by indictment with Assault of a Federal Officer in violation of 18 U.S.C. § 111(a); Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c); and three misdemeanors relating to unlawful and/or disorderly conduct at the U.S. Capitol Grounds and U.S. Capitol Building.   The indictment arises from the assault on the U.S. Capitol on January 6, 2021.

## Background

As the Court knows, the U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts

˅1˅

manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, S.E., in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.   Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged

and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

**Defendant's Actions**

The defendant is featured in two widely distributed videos and a photo from that day.   The New Yorker posted a video titled, "A Reporter's Footage Inside the Capitol Siege."[1]   In this video, defendant Harris tells a police officer who appears to be blocking his path, "You're outnumbered. There's a fucking million of us out there, and we're listing to Trump-your boss."   The officer then steps back, essentially directing the defendant and others up a set of stairs to a floor where fortunately there were only empty offices.

---

[1] A copy of this video was sent to chambers and defense counsel because it could not be filed via ECF.   A still photograph from the video (Government's Exhibit 1) is set forth below.



Also, an initial review of ProPublica footage from inside the U.S. Capitol shows the defendant near the Capitol Rotunda at approximately 2:37 p.m.   The defendant picks up a telephone and shouts, "Can I speak to Pelosi? We're coming bitch. Oh, Mike Pence, we're coming for you, too, you fucking traitor!"   See Government's Exhibit 2 (ProPublica video filed with Chambers and counsel).   A screen shot of the defendant from this video is included below.



Finally, the defendant was photographed standing on a statute of President Gerald Ford. See Exhibit 3 (Defendant on President Ford Statute).   He is wearing a camouflage MAGA hat and grey sweatshirt, and a distinctive tattoo on his right arm can be seen in the photograph.   A person who has known the defendant for several years identified him from this photo.   Further, the photo appears to be the defendant based on his known photo from the California Department of Motor Vehicles.   Finally, cell site evidence for a phone subscribed to the defendant places him in or near the Capitol that day.

**Defendant's Arrest and Proceedings in Florida**

The defendant was arrested on or about March 18, 2021 in the Southern District of Florida. At the defendant's request, a detention hearing was not held until March 26, 2021.   After hearing a proffer from the Government and argument, the Honorable Magistrate Judge Patrick Hunt held the defendant without bond under 18 U.S.C. § 3142 (f)(2)(A) and (B).[2]  The transcript of the hearing in Florida and Judge Hunt's Memorandum Order are attached to the defendant's motion.

**Applicable Law**

Under 18 U.S.C. § 3142 (f)(2)(A), a defendant will be held if there is proof by a preponderance of the evidence that the defendant poses a serious risk of flight.   *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).   Under 18 U.S.C. § 3142 (f)(2)(B), a defendant will be held if there is clear and convincing evidence that there is a serious risk that the defendant will obstruct justice or threaten, injure or intimidate a witness or juror.   *See United States v. Chrestman*, 2021 WL 765662 (D.D.C.) (Howell, C.J.).   The four factors under Section 3142(g) that are to guide the Court's detention decision—(1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed to the community by the defendant's release—strongly support the need for and wisdom of detaining the defendant.[3]   See 18 U.S.C. § 3142(g).

---

2 After indictment, at a detention hearing, the government may present evidence by way of a proffer.   *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

3 Magistrate Judge Hunt's opinion is subject to *de novo* review.   *Chrestman*, 2021 WL 765662 at *2.   The defendant suggests that the Court should not consider "dangerousness" relying on cases from the First and Third Circuits.   Def's. Mtn. at 5.   The defendant acknowledges that this Court has ruled otherwise, however.   Id.   The Government believes that the statute compels the Court to consider "dangerousness."   18 U.S.C. § 3142(g)(4); *see also United States v. Singleton,* 182 F.3d 7, 12 (D.C. Cir. 1999) (discussing two-step process set forth in statute).

## Argument

**I.     The defendant presents a serious risk of flight and danger to the community.**

**A.     Nature and Circumstances of the Offenses Charged**

In evaluating the nature and circumstance of the offenses, the Government believes that the Court should consider the factors set forth by Chief Judge Howell in *Chrestman*. 2021 WL 765662 at *7-8 (noting seven factors for a court to consider).   Judge Hunt considered these factors and found that they weigh in favor of detention.   <u>See</u> Def's. Mtn. (Doc. 9) at Ex. 1 at 2-3.   Here, as noted above, the defendant is charged with two felonies.   He took a *de facto* leadership role in the assault on the Capitol on January 6, 2021 by confronting law enforcement; he made threats to law enforcement officers; and he encouraged violence against Speaker Pelosi and Vice President Pence.   <u>Id.</u>   Moreover, the defendant traveled all the way across the country to participate in the attack on the Capitol that day.   The defendant's actions demonstrate that he was not simply "caught up in the moment" or that he viewed the assault on the Capitol as a "sophomoric prank." Instead, he was intent on disrupting the certification process and his threats show that he "meant business."   This factor, then, weighs in favor of detention.[4]

**B.          Weight of the Evidence**

The weight of the evidence against the defendant is very strong.   As noted above, the

---

[4] At the hearing before Judge Hunt, the Government estimated that the defendant's guideline range was 15-21 months based on a Category I Criminal History and Base Offense Level 14 under U.S.S.G. § 2J1.2.   The Government notes that, while it is best to be conservative in estimating the guideline ranges at this juncture, the defendant's guideline range actually appears to be 41-51 months based on his implied threat to Speaker Pelosi and Vice President Pence.   *See United States v. Grap*, 368 F.3d 824 (8th Cir. 2004) (applying eight point enhancement under U.S.S.G. § 2J1.2(b)(1)(B) when defendant made a threat of physical violence even though the threat was not communicated to the intended victim); *see also United States v. Loudon*, 385 F.3d 795 (2d Cir. 2004) (applying eight point enhancement for implied threat when defendant left message saying it was good that probation officer was not outside now because defendant was not sure what he would do if he was face-to-face with probation officer).

defendant can clearly be seen in video and still photographs from inside the Capitol that day. Moreover, the defendant can be identified in the photographs by a distinctive tattoo that he has on his right arm.   In addition, cell site evidence places the defendant's cell phone in or near the Capitol on January 6, 2021.   Agents recovered this phone in his arrest.   This factor then also weighs in favor of detention.

### C.   The Defendant's History and Characteristics

While the defendant has a minor criminal record, the evidence shows that he is a serious risk of flight.   He is forty years old.   He does not have a fixed address, employment, or close family ties or ties to any community.    While the defendant apparently lists Happy Valley, Oregon as his home, GPS evidence from his cell phone shows that, beginning in February 20, 2021, the defendant traveled through Arizona, New Mexico, Texas, Oklahoma, Arkansas, Tennessee, Alabama, Georgia, and he was eventually arrested in Florida.   Moreover, on March 15, 2021, in an effort to apprehend the defendant, a Task Force Officer with the FBI called the defendant and left a message identifying herself.   The defendant did not return her call.   While the Government cannot conclusively show that the defendant received her call, as noted above, the defendant did have the cell phone she called when he was arrested.   Thus, the evidence shows that the defendant is unlikely to appear for trial if released.  *See United States v. Cherry*, 221 F. Supp. 3d 26, 35 (D.D.C. 2016) (considering defendant's lack of fixed address in determining whether defendant is a risk of flight); *United States v. Densmore*, 2020 WL 3060379 (D. Nev.) (same).

In his motion, the defendant argues that a proper context is necessary for his lifestyle.   He claims that he had been living with his father and working as a delivery driver with Amazon when the pandemic began.   He contends that he quit his job rather than expose his father to possible

COVID-19 infection.   He later began to travel across the country looking for work to be able to support his six-month old twins and their mother.   See Def's. Mtn. (Doc. 9) at 10-11.

This argument is simply not persuasive.   Initially, does the defendant really expect the Court to believe that he drove across the country while living out of his car to find work and a new place to live for his newborns and their mother?   Wouldn't one expect a job seeker to use other easier methods (e.g., the internet) to look for work?   Isn't a much more likely explanation that, given the repeated and widespread news of the FBI attempting to identify and locate persons who were involved in the assault on the Capitol, that the defendant chose to run?   The defendant had to know that law enforcement was looking for him (even before the Task Force Officer called him) even if they did not at first know his name. The Government submits that generally people who are innocently traveling across the country will promptly return a call from the FBI out of simple curiosity.

Secondly, the defendant's argument is contradicted by what he and his father said when interviewed for the Pre-Trial Services Report after his arrest.   See Exhibit 4 (Pre-Trial Services Report).   The defendant reported working for Amazon for approximately one month.   Id. at 2. The defendant's father reported that the defendant had relocated to Oregon in approximately September 2020.   Id.   The defendant lived out of his car for four months before moving in with his father for only about two months.   Id.   Apparently, after several months of unknown whereabouts, the defendant then began traveling across the country and living out of his car for approximately eleven weeks before his arrest.   Id.   Indeed, if the defendant's father is correct, it appears that the defendant began to live out of his car "full time" shortly after the assault on the Capitol on January 6, 2021.   Certainly, it is reasonable to infer that the defendant realized that law

enforcement authorities would be trying to identify him and arrest him given how prominently he was shown in photographs and video from that day.   At the very least, one must conclude (as did Judge Hunt) that the defendant was "a rolling stone" with no ties to any community or even his own family.

The defendant attempts to allay any concerns of his flight risk by proffering that his father will secure a bond with the equity in this home.   Def's. Mtn. (Doc. 9) at 11-12.   However, the courts have held that an offer to post bond by a defendant's family is insufficient to overcome a finding of risk of flight.   *See, e. g., United States v. Brennerman*, 705 Fed. Appx. 13, 16 (2d Cir. 2017); *United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (same).   Here, the defendant chose to live out of his car for eleven weeks after the assault on the Capitol.   He left his newborn twins behind in doing so.   He also chose to quit paying his bills.   He is now facing a substantial sentence if convicted at trial, and the case against him is strong.   Accordingly, as Judge Hunt found, the Government has met its burden in showing that the defendant is a serious flight risk under 18 U.S.C. 3142(f)(A).

### D.   Danger to the Community

The defendant's role in the assault on the Capitol was not isolated.   On or about December 20, 2020, he was part of a group of protesters who attempted to break into the Oregon capitol building.[5]   He assaulted a journalist who was there, apparently because the journalist was taking photographs of the protesters.   See Exhibit 5 (Still Photos from Oregon Capitol).   About two

---

[5] In his motion (Def's. Mtn. at 6-9), the defendant relies primarily on the Circuit's decision in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).   This reliance is misplaced because *Munchel* did not involve risk of flight or a defendant who assaulted or threatened anyone or who had shown previous acts of obstruction of justice. *Munchel*, 991 F.3d at 1279; 1283-84.

weeks later, he took part on the assault on the U.S. Capitol, threatening police officers, Speaker Pelosi, and Vice President Pence.   He chose to live out of his car since that time and traveled across the country away from his infant children and his father.   He now faces a substantial jail sentence if convicted at trial.   Accordingly, the defendant is not only a risk of flight, but a continuing danger to the community and a continuing threat to obstruct justice and/or witnesses.

　　　　WHEREFORE, for the foregoing reasons, the Government respectfully requests that the Court deny the defendant's bond review motion.

　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　CHANNING D. PHILLIPS
　　　　　　　　　　ACTING UNITED STATES ATTORNEY
　　　　　　　　　　D.C. Bar No. 415793


　　　　　　　　　　    /s/ Nihar R. Mohanty
　　　　　　　　　　NIHAR R. MOHANTY
　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　D. C. Bar No. 436-686
　　　　　　　　　　555 4th Street, N.W.
　　　　　　　　　　Room 4120
　　　　　　　　　　Washington, D.C.   20530
　　　　　　　　　　(202) 252-7700