UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.: 21-00189 (CJN)

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

RICHARD HARRIS,

                    Defendant.

_____/

## DEFENDANT'S RENEWED MOTION TO DISMISS COUNTS ONE AND THREE OF THE SUPERSEDING INDICTMENT

Defendant Richard Harris, through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(3)(B), moves this Court to dismiss Counts One and Three of the Superseding Indictment.  These counts charge him with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); and assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1).  D.E. 35.  With respect to Count One, Mr. Harris's conduct does not fall within the statute's reach as interpreted by the lead opinion in *United States v. Fischer*, --- F. 4th ---, 2023 WL 2817988 (D.C. Circuit April 7, 2023).  Count One should also be dismissed because 18 U.S.C. § 1512(c)(2) is unconstitutionally vague, both facially and as applied to Mr. Harris.  If Count One is dismissed, the government will be unable to prove Count Three because the only other felony charged in the Superseding Indictment— civil disorder in violation of 18 U.S.C. § 231(a)(3) (Count Two)—is not a valid predicate offense for a § 111(a)(1) conviction.

**I.  Factual Background**

The charges relate to events that occurred at the United States Capitol on January 6, 2021. In the interest of judicial economy, and because this Court is well aware of the circumstances surrounding these charges, Mr. Harris adopts in full the factual background contained in his first motion to dismiss.  *See* D.E. 32 at 1-2.

**II. Legal Argument**

Count One, which charges Mr. Harris under 18 U.S.C. § 1512(c)(2) with corruptly obstructing, influencing, and impeding an official proceeding, should be dismissed for both statutory and constitutional reasons. The statute does not cover Mr. Harris's conduct on January 6, 2021, because his actions that day were not "independently unlawful" and thus were not done "corruptly."  *Fischer*, 2023 WL 2817988, at *7.  The statute is facially unconstitutional under the void-for-vagueness doctrine because it fails to provide fair notice as to what conduct qualifies as being done "corruptly," thereby inviting arbitrary and discriminatory prosecution by law enforcement.  It is unconstitutionally vague as applied to Mr. Harris because the plain text of the statute did not provide him fair warning that his conduct at the Capitol that day subjected him to federal prosecution.

Count Three should also be dismissed.  This Count charges Mr. Harris under 18 § 111(a)(1) with assaulting, resisting, opposing, impeding, intimidating, and interfering with an officer and employee of the United States, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.  Count Three specifically lists as other felonies §

2

1512(c)(2) and § 231(a)(3).   Section 231(a)(3) prohibits identical conduct to that proscribed by § 111(a)(1); it is therefore neither a separate offense nor "another felony" sufficient to support a § 111(a)(1) conviction.   If the § 1512(c)(2) count is dismissed, the § 111(a)(1) count must therefore be dismissed as well.

## A. Legal Standards

A defendant may move to dismiss a charge based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B).   In reviewing such motions, courts are instructed to look solely to "whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged."   *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016).   The defense of failure of an indictment to charge an offense includes the claim that the statute charged is unconstitutional.   *United States v. Eshetu*, 863 F.3d 946, 962 (D.C. Cir. 2017), *vacated on other grounds*, 898 F.3d 36 (D.C. Cir. 2018).

Penal statutes are to be construed strictly with any statutory ambiguities resolved in favor of the defendant.   *See Arthur Andersen LLP v. U.S.*, 544 U.S. 696, 703 (2005) (restraint should be exercised "both out of deference to the prerogative of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed") (internal quotation marks and citations omitted); *Wooden v. United States*, 142 S. Ct. 1063, 1082 (2022) ("the 'rule of lenity' is a new name for an old idea—the notion that 'penal laws should be construed strictly'") (citation omitted) (Gorsuch, J., concurring).   With respect to § 1512, "restraint is particularly appropriate," because often the "act underlying the conviction" is "by itself

innocuous." *Arthur Andersen LLP*, 544 U.S. at 703.

**B. The § 1512 Count should be dismissed on both statutory and constitutional grounds.**

Mr. Harris contends that in light of the District of Columbia Circuit's decision in *United States v. Fischer*, --- F.4th ---, 2023 WL 2817988 (D.C. Circuit April 7, 2023), the § 1512(c)(2) count against him must be dismissed for both statutory and constitutional reasons. If the definition of "corruptly" from the lead opinion in *Fischer* is applied here, § 1512(c)(2) does not cover Mr. Harris's conduct. Also, § 1512(c)(2) is both *facially* unconstitutional (an issue never addressed by the D.C. Circuit in *Fischer*) and unconstitutional as applied to Mr. Harris.

**i.    Mr. Harris's conduct was not done sufficiently "corruptly" to be within the reach of § 1512(c)(2).**

Section 1512(c)(2) subjects to prosecution anyone who "corruptly . . . obstructs, influences, or impedes, any official proceeding, or attempts to do so."  § 1512(c)(2). The splintered 1-1-1 ruling in *Fischer* did not establish a definition of "corruptly" as used in § 1512(c); the Court simply held that the defendants' conduct in that case was sufficiently corrupt to be within the statute's reach.  But *Fischer* involved conduct that far exceeded Mr. Harris's in the instant case; the defendants there encouraged rioters to charge; had physical encounters with police; participated in pushing the police; repeatedly struck officers with a bat; brandished a stolen police shield; and brought a grappling hook, rope, bulletproof vest, helmets, and a mouth guard to the Capitol.  *See Fischer*, 2023 WL 2817988, at *1-*2.

Mr. Harris, by contrast, had no physical encounter with police, did not come prepared for battle, and did not engage in physical violence or use physical force

4

either in or outside the Capitol.  His conduct was therefore materially different from that which the D.C. Circuit in *Fischer* found to be punishable under § 1512(c).[1]

Mr. Harris asks this Court to apply the definition of "corruptly" advanced by the principal opinion in *Fischer*, authored by Judge Pan.  That opinion suggested that "'corrupt' intent exists when an action is independently unlawful—*i.e.,* an independently unlawful act is necessarily 'wrongful' and encompasses a perpetrator's use of 'independently corrupt means' or an 'unlawful method.'" *Fischer*, 2023 WL 2817988, at *7 (citations omitted).  In addition to proving that an act is "independently unlawful," the government in a § 1512(c)(2) prosecution must also prove that the act was done "with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person."  *Id*. (citations omitted).

The defendants in *Fischer* allegedly violated 18 U.S.C. § 111(a) by physically assaulting police officers.  That was sufficient, Judge Pan found, to qualify as "independently unlawful conduct."  Mr. Harris is charged separately with violating § 111(a)(1), but unlike the defendants in *Fischer*, the conduct purportedly underlying Mr. Harris's § 111(a)(1) count is not *independently* unlawful from the conduct underlying his § 1512(c)(2) count.  This is because a violation of § 111(a)(1) can be established in several different ways—some of which are independently unlawful from § 1512(c)(2) and others which are not.  *See* § 111(a)(1) (subjecting to punishment anyone who forcibly assaults, resists, opposes, impedes, intimidates, or

---

[1] Mr. Harris adopts in full and preserves for future purposes the statutory argument advanced by the dissent in *Fischer* – that is, that subsection (c)(2) refers only to acts that affect the integrity or availability of evidence; and that "corruptly" requires "that the defendant seek an unlawful financial, professional, or exculpatory advantage" rather than the "much more diffuse, intangible benefit of

interferes" with a federal officer).

Mr. Harris did not "assault" any officer; rather, his conduct could only be charged—if at all—under § 111(a)(1)'s alternative terms such as "impeding" or "interfering." Those terms refer to precisely the conduct prohibited by § 1512(c)(2), which makes unlawful "obstruct[ing], influenc[ing], or imped[ing] any official proceeding." § 1512(c)(2). For a § 111(a)(1) charge to be "independently unlawful," the government must allege facts sufficient to prove that the defendant "forcibly assault[ed]" officers, rather than simply impeded or interfered. The government cannot allege such facts, and the § 1512(c)(2) count therefore must be dismissed.

To be sure, Judge Walker's concurrence in *Fischer* would have defined "corruptly" differently, as requiring a defendant to act "with an intent to procure an unlawful benefit either for himself or for some other person." 2023 WL 2817988, at *17 (Walker, J., concurring). But that definition does not control here, "because a majority of the panel . . . expressly declined to endorse the concurrence's definition of 'corruptly.'" *Id.* at *5 n.5. Judge Pan's proposed definition, which additionally requires "independently unlawful" means, is well-supported in the case law and would establish a more workable test for determining whether an individual violated the statute. Mr. Harris therefore asks this Court to apply that definition in his case. If it does, the inevitable conclusion is that this Count must be dismissed.

### ii. Count One should also be dismissed on vagueness grounds.

The District of Colombia Circuit in *Fischer* found that § 1512(c)(2) was not

---

having a preferred candidate remain President." *See* 2023 WL 2817988, at *44; *43 (Katsas, J., dissenting); *see generally id.* at *28 - *45 (Katsas, J., dissenting).

unconstitutionally vague as applied to the "extreme conduct" of the defendants in that case, 2023 WL 2818988, at *8-*9, but was silent on the question whether the statute is facially unconstitutionally vague. The statute is both facially unconstitutionally vague and unconstitutionally vague as applied to Mr. Harris.

### 1. *Section 1512(c)(2) is facially vague.*

In *Fischer*, both the majority and dissent agreed that § 1512(c)(2) was not vague as applied, considering it "beyond debate" that the defendants there "had fair notice that assaulting law enforcement officers in an effort to prevent Congress from certifying election results was 'wrongful' and 'corrupt' under the law." 2023 WL 2817988, at *9. None of the three opinions, however, considered facial vagueness.

Facial vagueness challenges to criminal statutes are available following the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015); *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018); and *United States v. Davis*, 139 S. Ct. 2319 (2019). *See Johnson*, 576 U.S. at 636 (Alito, J., dissenting) (criticizing the majority for contravening the prior rule that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined on an as-applied basis") (citations omitted). *Johnson* and its progeny further made clear that a statute can be facially vague—and thus unconstitutional—without being vague in all of its applications. *See id.* at 602 ("our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp"), *accord Dimaya*, 138 S. Ct. at 1214 n.3;

*see also Davis*, 139 S. Ct. at 2336.[2]  Mr. Harris therefore raises a facial challenge.

"In our constitutional order, a vague law is no law at all."  *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).  A law is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or if it "authorizes or encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  It is premised on the theory "that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."  *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963).

These principles apply with full force to § 1512(c)(2), which prohibits "corruptly" obstructing, influencing, or impeding any official proceeding.  As the statute is written, it is impossible to determine how an accused acts "corruptly"—a highly

---

[2] Courts across the country have noted the extent to which *Johnson* and its progeny expanded the availability of facial vagueness challenges.  *See, e.g., United States v. Telecom Association v. Federal Communications Commission*, 825 F.3d 675, 735-36 (D.C. Cir. 2016) ("Noting that past '*holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp,' the [Supreme] Court described the 'supposed requirement of vagueness in *all* its applications' as a 'tautology'") (citing *Johnson*, 576 U.S. at 602); *United States v. Larson*, 747 Fed. App'x 927, 930 (4th Cir. 2018) ("[a]fter *Johnson*, at least we know that a statute that doesn't raise First Amendment problems may nonetheless be impermissibly vague on due process grounds"); *United States v. Cook*, 914 F.3d 545, 553 (7th Cir. 2019), *vacated on other grounds*, 138 S. Ct. 2668 (2018) (*Johnson* puts to rest the notion "that a litigant must show that a statute is vague in *all* of its applications in order to mount a successful facial challenge"); *Local 8027, AFT-N.H., AFL-CIO v. Edelbut*, 2023 WL 171392, *10 (D.N.H. Jan. 12, 2023) (*Johnson* and its progeny "heralded a more meaningful shift in the void-for-vagueness doctrine" such that the "vague in all applications" standard is no longer applicable).

subjective and undefined term—in violation of the law.  Indeed, that ambiguity is evidenced by the competing interpretations of the statute advanced by the three separate *Fischer* opinions.  *See also United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022) (district court decisions interpreting "corruptly" "have not landed on a consistent approach").

Notably, the competing definitions of "corruptly" advanced by the District of Colombia Circuit in *Fischer* do not save the statute.  This is because "[w]hen Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again."  *Davis*, 139 S. Ct. at 2323.  This rule reflects the fact that the doctrine "prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers."  *Id*. at 2325.  *See also Dimaya*, 138 S. Ct. at 1224 (noting that vagueness doctrine, "at least properly conceived, serves as a faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under our Constitution").  Courts violate those separation-of-powers principles by grafting their own meaning onto vague statutes.  The Supreme Court has made clear that courts instead should invite Congress to amend the law to better explain precisely what conduct it wanted to regulate.  *Cf. United States v. Miller*, 605 F. Supp. 63, 71-72 (a vague indictment cannot be saved by a bill of particulars).

A person of ordinary intelligence has no way to know when he engages in conduct "corruptly," and therefore has no way to determine when his actions or mental state cross the line from legal to illegal.  Making matters worse, a person of

ordinary intelligence has no way to determine whether the statutory term "corruptly" modifies the *actus reus*, the *mens rea*, or both. Must the government prove that the conduct itself is inherently corrupt, by objective standards, and thus done "corruptly"? Or must the government prove that the defendant engaged in certain conduct with a corrupt mental state? Or must it prove both? The statute invites speculation but provides no concrete answers. For these reasons, it falls far short of providing the fair notice that due process requires.

Consider, for example, a person who seeks to determine the meaning of the statutory term, to better understand what behavior or mental state is permissible and what is prohibited. Black's Law Dictionary defines the adverb as "[i]n a corrupt or depraved manner; by means of corruption or bribery." Black's Law Dictionary (10th ed. 2017). Merriam-Webster defines "corrupt," the adjective, as "morally degenerate and perverted: depraved" and "characterized by improper conduct (such as bribery or the selling of favors)." Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/corrupt (last accessed April 6, 2023). But even after consulting these definitions, a person of ordinary intelligence is left wondering what, precisely, qualifies his conduct as sufficiently "depraved."

"Vague terms do not suddenly become clear when they are defined by reference to other vague terms." *Cartwright v. Maynard*, 822 F.2d 1477, 1489 (10th Cir. 1987) (en banc), *aff'd* 486 U.S. 356 (1988). "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper,' are no more specific—indeed they may be less specific— than 'corrupt.'" *United States v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991). Consulting the dictionary therefore provides no guidance as to where the statute

draws the line between, on the one hand, conduct or mental state that is prohibited; and, on the other hand, conduct or mental state that may not be "inherently benign," *Arthur Andersen,* LLP, 554 U.S. at 704, but that nonetheless does not fall within the statute's proscription.

The Supreme Court has previously held unconstitutional statutes containing vague and undefined statutory phrases such as "involves conduct that presents a serious potential risk of physical injury to another" and "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See Johnson v. United States*, 576 U.S. 591 (2015); *Dimaya*, 138 S. Ct. 1204. The term "corruptly" suffers even greater constitutional deficiencies: It is not defined at all in the statute, vaguely or otherwise. The "indeterminacy of the wide-ranging inquiry" mandated by § 1512(c)'s requirement that the acts described in subsections (c)(1) and (c)(2) be done corruptly—whatever that means—"both denies fair notice to defendants and invites arbitrary enforcement by judges," as well as by police and prosecutors. *Johnson*, 576 U.S. at 597. The word "corruptly" leaves "grave uncertainty" about what conduct is prohibited and "offers no reliable way" to determine the type of conduct that supports a conviction under § 1512(c). *See id*. at 597-98.

Under the plain text of § 1512(c), it is not enough for a defendant to merely "alter[ ], destroy[ ], mutilate[ ], or conceal[ ] a record, document, or other object" or "otherwise obstruct[ ], influence[ ], or impede[ ] any official proceeding." § 1512(c)(1)-(2). Rather, a defendant must engage in the conduct described in one of those subsections *and* he must do so "corruptly." But it is unclear when simply

obstructing an official proceeding crosses the line into doing so corruptly. The statute therefore fails the fair-notice pillar of the void-for-vagueness doctrine. *See United States v. Davis*, 139 S. Ct. at 2325 ("Our doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers"). For similar reasons, the statute invites arbitrary and discriminatory enforcement and thus violates the separation-of-powers principles that underlie the vagueness doctrine. These principles require "that a legislature establish minimal guidelines to govern law enforcement," *Smith v. Goguen*, 415 U.S. 566, 574 (1974), and such guidelines are sorely lacking from § 1512(c)(2). Without these guidelines, § 1512(c)(2) provides for "a standardless sweep [that] allows policemen, prosecutors, and juries"—as well as judges—"to pursue their personal predilections." *Id*.

The District of Columbia Circuit's decision in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), is instructive. There, the Court considered a similarly worded statute, 18 U.S.C. § 1505, which punished anyone "whoever corruptly, or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes or endeavors to influence, obstruct, or impede, the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States." *Id*. at 377. The Circuit Court held that "the term 'corruptly' is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress," which is what Vice Admiral Poindexter allegedly did. *Id*. at 379.

The term "corruptly," as used in § 1512(c)(2), also "is too vague to provide

constitutionally adequate notice" of what it prohibits.  Any potential narrowing interpretations of the word "corruptly" proposed but not adopted by the Court in *Poindexter* are not properly applied under more recent Supreme Court precedent, which makes clear that vague laws should be held unconstitutional rather than redrafted by Article III courts.  *See e.g. Davis*, 139 S. Ct. at 2323 (proper remedy is to treat law as a "nullity," not to rewrite it); *Johnson*, 576 U.S. at 502-03 ("our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp") (emphasis in original).

The district courts that have held that *Poindexter* doesn't apply to this statute— and accordingly that the statute is not unconstitutionally vague—have misapplied this precedent.  The court in *United States v. McHugh*, for example, acknowledged that the word corruptly is "inherently imprecise, and it even bears some resemblance to words that the Supreme Court has previously struck down for requiring 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'"  2022 WL 296304, at *11 (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008) (pointing to the words "annoying" and "indecent" as examples).  The court in *McHugh* nonetheless concluded that "corruptly" must instead mean "consciousness of wrongdoing," and in so doing relied on the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005).  There are two problems with this reasoning.

First, the Court in *Arthur Andersen* did not consider a vagueness challenge; it therefore never addressed the question of whether "corruptly" is unconstitutionally

vague.   Second, and more importantly, the Supreme Court in *Arthur Andersen* primarily held that the Fifth Circuit's decision that "the jury need not find any consciousness of wrongdoing" in order to convict a defendant of violating § 1512(b)(2) was incorrect.   *Id.* at 702.   That decision prescribes a *mens rea* requirement—indeed, a more exacting requirement than that previously applied by the Fifth Circuit.   *Id.* at 705-06.   It does not control the vagueness challenge to a similar provision of the statute.   This is particularly true because § 1512(b)(2), the statutory subsection the Court considered in *Arthur Andersen*, used the phrase "knowingly corruptly."   The Court considered that phrase as a whole to determine the applicable *mens rea* requirement.   *See id.*   Section 1512(c), however, does not use that phrase.   It simply says "**Whoever corruptly** [ ]alters, destroys mutilates or conceals a record . . . or, [ ]otherwise obstructs, influents, or impedes any official proceeding" is subject to punishment under the statute.   § 1512(c)(1)-(2) (emphasis added).   There is therefore no way to determine whether "corruptly" refers to the *mens rea* or *actus reus*, further highlighting the vagueness of this provision.

The district courts that have rejected vagueness challenges to this statute have done so on the theory that "much has transpired in the four decades that have passed since *Poindexter*," *see e.g. United States v. Puma*, 2022 WL 823079, *10 (D.D.C. March 19, 2022).   But this reasoning disregards the fact that much has transpired in the void-for-vagueness context as well.   *See, e.g., United States v. Sandlin*, 2021 WL 5865006, *11 (D.D.C. Dec. 10, 2021) (relying on a 1997 Supreme Court case in applying the void-for-vagueness doctrine).   As discussed above, more recent Supreme Court precedent has expanded and clarified the void-for-vagueness

doctrine. *See, e.g., Johnson,* 576 U.S. 591; *Dimaya,* 138 S. Ct. 1204; *Davis,* 139 S. Ct. 2319; *Williams*, 553 U.S. 285.   And that precedent compels that the word "corruptly" is sufficiently vague that it fails to put people on fair notice of precisely what they must not do to avoid exposure to federal prosecution.   "[O]n its face, the word 'corruptly' is vague."  *Poindexter*, 951 F.2d at 379.   "[P]eople must guess at its meaning and differ as to its application."

The District of Colombia Circuit's ruling on the statutory question in *Fischer* further emphasizes the vagueness problems with the statute.   *See Fischer*, 2023 WL 2817988, at *44 (Katsas, J., dissenting) ("my colleagues' [statutory] approach creates vagueness problems as well as First Amendment ones").   As Judge Katsas pointed out in dissent, the all-encompassing reading of § 1512(c) makes the provision "implausibly broad and unconstitutional in a significant number of its applications."   *Id*. at *28.   The Supreme Court has previously held statues with catch-all categories like this one to be unconstitutional if the catch-all category is not limited by the preceding list.   *See, e.g., McBoyle v. United States*, 283 U.S. 25 (1931) (statute defining 'motor vehicle' as "automobile, automobile truck, automobile wagon, motorcycle, or any other self-propelled vehicle not designed for running on rails" was unconstitutional for failing to provide fair notice of what it prohibits); *cf. Yates v. United States*, 574 U.S. 528 (2015) (statutory phrase "any record, document, or tangible object" did not cover fish in part because defendant did not have fair notice that his conduct with respect to fish was covered under the statute).

Section 1512(c)(2) is facially vague, and the proper remedy is not to impose a

court-created meaning onto the statute but rather to allow the legislature to amend its work. *See Davis*, 139 S. Ct. at 2323 (vague laws are invalid because they "hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges"). Mr. Harris therefore asks this Court to dismiss Count 1 on facial vagueness grounds.

### 2. *Section 1512(c)(2) is vague as applied to Mr. Harris*

The statute is also vague as applied to Mr. Harris because, for the reasons discussed above, he did not have fair warning that his conduct was prohibited by the statute's terms. Unlike the *Fischer* defendants, Mr. Harris's conduct was not "extreme" such that he had notice that it would be prohibited under § 1512(c)(2). *Cf. Fischer*, 2023 WL 2817988, at *8. Unlike the defendants in *Fischer*, he did not engage in any violence. He did not strike officers with a bat, did not brandish a stolen police shield, and did not cause or threaten any bodily injury. *Cf.* 2023 WL 2817988, at *1-*2. The statute therefore cannot be constitutionally applied to him.

### C. The § 111 Count should be dismissed because § 231(a)(3) is not a valid predicate offense.

Mr. Harris is charged in Count Three of the Indictment with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1). Section 111 creates "three separate offenses: (1) simple assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a dangerous weapon." *Sophin v. United States*, 153 F. Supp. 3d 956, 962 (W.D. Tex. 2015) (internal quotation marks and citations omitted). "[S]imple assault is a misdemeanor offense under § 111(a)," and "the other two forms of assault are felonies." *Id.*

16

The government in this case chose to pursue a felony charge, under the second category of "more serious assaults but not involving a dangerous weapon." The Superseding Indictment in Count Three alleges that Mr. Harris "forcibly assault[ed], resist[ed], oppose[d], impede[d], intimidate[d], and interfere[d] with" an "officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve the intent to commit another felony." D.E. 1 at 1. If Count One is dismissed, the only "[ ]other felony" alleged in the indictment is felony civil disorder, the § 231(a)(3) count.

The § 231(a)(3) count, however, is predicated on the same conduct as the § 111(a)(1) count. It therefore cannot be a valid "[ ]other felony" because under binding Supreme Court precedent, Mr. Harris cannot be convicted of both offenses. "Where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." *Rutledge v. United States*, 517 U.S. 292, 297 (1996). *See, e.g., Ball v. United States*, 470 U.S. 856 (1985) (holding that a defendant cannot be convicted of both illegal receipt and illegal possession of a firearm). "If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty." *Whalen v. United States*, 445 U.S. 684, 689 (1980). The Supreme Court has developed a test to determine whether two statutes proscribe the same offense. In

cases where "the same act or transaction constitutes a violation of two statutory provisions, the test to be applied to determine whether there are two offenses or one is whether **each** provision requires proof of a fact that the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (emphasis added).

Here, § 231(a)(3) does not require proof of a fact that § 111(a)(1) does not. To win a conviction under § 231(a)(3), the government must prove that Mr. Harris committed an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his/her official duties. The government likewise must prove that Mr. Harris had the intent to do so. *See United States v. McHugh*, 583 F. Supp. 3d 1, 25 (D.D.C. 2022) ("§ 231(a)(3) is a specific intent statute, criminalizing only acts performed <u>with the intent</u> to obstruct, impede, or interfere with a law enforcement officer") (emphasis in original).

Meanwhile, to win a conviction under § 111(a)(1), the government must prove that Mr. Harris forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with an officer and employee of the United States, while such person was engaged in and on account of the performance of his official duties. The government additionally must prove that Mr. Harris intended to commit another felony—which, if Count One is dismissed, would be § 231(a)(3). To do so, it must inevitably rely on the identical conduct proscribed by the civil disorder statute.

Accordingly, if § 231(a)(3) is the only other felony remaining after § 1512 is dismissed, then the § 111(a)(1) count cannot stand. Pre-trial dismissal is warranted here, notwithstanding the rule that "the Government may seek a multiple-count indictment" alleging lesser-included offenses as long as judgment is entered "on only

one of the statutory offenses." *Ball*, 470 U.S. 856, 865 (1985).   Charging lesser included offenses as separate counts is one matter, but using a lesser included offense to satisfy an element requiring intent to commit "another felony" is an entirely different matter.   Section 231 is a lesser included offense involving identical conduct to that proscribed by § 111(a)(1); it therefore cannot in any circumstances act as a predicate to support a § 111(a)(1) count.   If the § 1512(c)(2) count is dismissed, the government will be able to point to only § 231 as the other felony. But § 231 is not, in fact, an independent and separate offense—so even if the government proves that Mr. Harris is guilty of Count Two (the § 231 count), it will be unable to prove the "[ ]other felony" element required to win a conviction under § 111(a)(1).   Here, as in *Ball*, the "independent but overlapping statutes simply are not directed to separate evils under the circumstances." 470 U.S. at 864 (internal quotation marks and citation omitted).

The merger doctrine provides a useful if imperfect analogy here.   When, for example, a defendant is charged with both entering a bank with intent to commit a felony and robbery, "the heart of the [former] crime is the intent to steal," which "merges into the completed crime if the robbery is consummated." *Prince v. United States*, 352 U.S. 322, 328 (1957).   Here, § 231 does not merge into §111(a)(1); rather, § 111(a)(1) collapses into § 231.   This is because § 111(a)(1) explicitly requires *another* felony.   The government cannot use a lesser included offense to satisfy that "other felony" requirement, just as it could not use the crime of entering a bank with the intent to commit a robbery to satisfy a robbery statute that enhanced punishment if the robbery occurred with intent to commit another felony.

If the § 1512(c)(2) count is dismissed, then the § 111(a)(1) count must be dismissed as well, and pretrial dismissal is appropriate here. "The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges." *Ball*, 470 U.S. at 867 (Stephens, J., concurring). "The very fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that he must be guilty of at least one of those crimes." *Id*. at 867-868. Where "the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise verdict." *Id*. at 868. The "submission of two charges rather than one gives the prosecution the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue to debate as to his innocence." *Id*. (internal quotation marks and citation omitted). Mr. Harris therefore asks this Court to dismiss Count Three after dismissing Count One.

## III.     Conclusion

Counts One and Three of the Indictment, charging Mr. Harris with violating 18 U.S.C. § 1512(c)(2) and § 111(a)(1), should be dismissed. The plain text of § 1512(c) does not cover Mr. Harris's conduct, and the statute is unconstitutionally vague. The § 111(a)(1) count should be dismissed because, without § 1512(c), there is not "another felony" that Mr. Harris intended to violate.

WHEREFORE Defendant Richard Harris asks this Court to dismiss Counts One and Three of the Indictment.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

BY:     /s/ Eric M. Cohen
          Eric M. Cohen
          Assistant Federal Public Defender
          Florida Bar No. 328065
          150 West Flagler Street, Suite 1700
          Miami, Florida 33130-1556
          Tel:  305-530-7000/Fax:  305-536-4559
          E-Mail Address: Eric_Cohen@fd.org

BY:     /s/Kristy Militello
          Kristy Militello
          Assistant Federal Public Defender
          Attorney for Defendant
          Florida Bar No. 0056366
          450 South Australian Avenue
          Suite 500
          West Palm Beach, Florida  33401
          Tel: 561-833-6288
          Email: Kristy_Militello@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on **April 21, 2023**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


BY:    */s/ Eric M. Cohen*
                 Eric M. Cohen