UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | No. 21-CR-189 (CJN) |
| : | |
| **RICHARD LEE HARRIS,** : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' TRIAL BRIEF

The United States of America respectfully submits this trial brief in advance of the June 12, 2023, trial scheduled before this Court in this case. The brief provides a summary of the anticipated government witnesses' testimony and a discussion of certain evidentiary or other legal issues anticipated to arise.

## UNITED STATES' EVIDENCE

### I. The Government's Witnesses

The government currently intends to call the following witnesses in either its case-in-chief or in rebuttal to the defendant's evidence.

**A.  United States Capitol Police Captain Carneysha Mendoza**

United States Capitol Police ("USCP") Captain Carneysha Mendoza will provide overview testimony regarding the riot that took place at the Capitol on January 6, 2021. Captain Mendoza will identify relevant locations at the Capitol, and she will describe how the area was restricted by a perimeter of bicycle racks and snow fencing and was closed to the public because of the certification and because of COVID-19. She will describe how rioters broke through those barriers at the Peace Circle and advanced to the Lower West Terrace. Captain Mendoza will also describe how rioters eventually broke through police lines at the Lower West Terrace, an event

which led directly to the first breach of the Capitol itself. In addition, Captain Mendoza will describe different locations within the Capitol building, and the rioters' effect on those areas, including the Crypt and the Rotunda. Finally, Captain Mendoza will testify about the numerous other breaches that followed as the Capitol was besieged from all sides, engulfed in a civil disorder.

      **B.**      **Oregon State Police Sergeant Elias Breen**

Oregon State Police Sergeant Elias Breen will testify about the information set forth in the United States' Notice of Intent to Introduce Evidence under Federal Rule of Evidence 404(b). Dkt. 60. Specifically, he will testify about Defendant Richard Harris' ("Harris") actions at a December 21, 2020, riot at the Oregon State Capitol, including attempting to breach the Capitol building and Harris' assault of a journalist.

      **C.**      **United States Capitol Police Officer Stephen Nunn**

USCP Officer Stephen Nunn will testify about his participation in the conflict on the west front of the U.S. Capitol on January 6, 2021, where he and fellow officers formed a line on the northwest lawn, attempting to prevent rioters from progressing toward and into the Capitol building. Officer Nunn will also authenticate videos in which he appears, including a video showing Harris waving rioters forward toward the Capitol building.

      **D.**      **United States Capitol Police Sergeant David Millard**

USCP Sergeant David Millard is the designated victim for Counts Two and Four in the Second Superseding Indictment. Sergeant Millard will testify that he was called to the Rotunda and joined a line of law enforcement officers attempting to prevent rioters from continuing in the building. Sergeant Millard will further testify that after a standoff, rioters, with Harris at the front of the line, pushed past law enforcement officers. Sergeant Millard was crushed against a wall. Sergeant Millard will also testify that he then made his way to a hallway around the corner from

the Crypt, the Office of the Attending Physician ("OAP") Hallway, and that Harris resisted law enforcement officer direction and yelled at Sergeant Millard. Finally, Sergeant Millard will authenticate videos in which he appears, including a video showing Harris yelling at Sergeant Millard, "Stand down. You're outnumbered. There's a fucking million of us out there. And we are listening to Trump – your boss."

      **E.**      **Metropolitan Police Department Officer Kyle Gatewood**

Metropolitan Police Department ("MPD") Officer Kyle Gatewood will testify that while inside the U.S. Capitol building in the Old Senate Chamber area, he and other officers formed a police line across a hallway to prevent rioters from entering that hallway. At the front of this police line, Officer Gatewood was lifted off the ground after being pushed and shoved by rioters who were attempting to breach that line. Officer Gatewood will also testify that, later, in the Rotunda and East Foyer, his goal was to clear the rioters from the Capitol building. Officer Gatewood will also authenticate videos in which he appears, including a video showing Harris leading a "Whose House? Our House!" chant near the Old Senate Chamber.

      **F.**      **Metropolitan Police Department Lieutenant Michael Howden**

MPD Lieutenant Michael Howden is the designated victim for Counts Three and Five in the Second Superseding Indictment. Lieutenant Howden will testify that Harris physically assaulted him in the Rotunda of the U.S. Capitol building by grabbing his baton and pulling on it several times. Lieutenant Howden will testify that this interaction caused him to lurch forward into the crowd and that he was only able to retain his baton because another law enforcement officer assisted in pulling back the baton. Lieutenant Howden will also authenticate videos in which he appears, including his body-worn camera and an open-source video showing the assault in the Rotunda.

### G. Federal Bureau of Investigation Special Agent Michael McGillicuddy

Federal Bureau of Investigation Special Agent Michael McGillicuddy will testify about his investigation of the defendant. Special Agent McGillicuddy will also walk through the video and photographic evidence seized from the defendant's phone, including photographs related to the defendant's actions on December 21, 2020, photographs leading up to January 6, 2021, and photographs from January 6, 2021. Finally, Special Agent McGillicuddy will walk through open-source photograph and video exhibits to identify Harris.

In addition to the testimony outlined above, the USCP and MPD officer witnesses will testify as to their interactions with the rioters, their experience in attempting to clear the Capitol building and Capitol grounds, and how the surge of rioters in the Capitol building and on Capitol grounds affected the Congressional proceedings inside the Capitol where the 2020 electoral college vote was being certified.

## LEGAL AND EVIDENTIARY ISSUES

## II. Evidentiary Issues

### A. Non-Hearsay Statements

#### 1. Defendant's statements under Rule 801(d)(2)

The government intends to introduce a number of Harris' statements under Federal Rule of Evidence 801(d)(2), which defines an "Opposing Party's Statement" as non-hearsay. Fed. R. Evid. 801(d)(2). For example, while walking toward the U.S. Capitol on January 6, 2021, an unidentified person asked Harris, "Did you just say Pence voted against it?" Harris then replied, "Pence said he would not block. He would not block Biden's electors. They're storming the fucking Capitol now." *See* Exhibit 312. Harris made a similar comment on restricted Capitol grounds. Before breaching the Capitol building itself, Harris, while on the Northwest lawn of the

Capitol, stated to the camera, "They tear gassed us. Front fucking line, baby. We're storming the Capitol." *See* Exhibit 618.

In addition, in a confrontation with USCP Sergeant Millard, who had formed a police line in the OAP Hallway to prevent rioters from advancing further into the Capitol building, Harris stated, "We tried to vote. We tried to vote. Stand down." *See* Exhibit 303. In another interaction with Sergeant Millard in the OAP Hallway, Harris stated: "You're outnumbered. There's a fucking million of us out there, and we are listening to Trump—your boss." *See* Exhibit 304. Lastly, Harris picked up a landline phone in the Rotunda and stated, "Can I speak to Pelosi? Yeah, we're coming, bitch. Oh, Mike Pence? We're coming for you, too, fucking traitor." *See* Exhibit 302.

Finally, the Government intends to introduce an excel spreadsheet accessed by Harris on his cell phone on December 31, 2020. *See* Exhibit 635. In the spreadsheet, "Copy of DC Rally," Harris includes his full name and email address with the following text:

> I'm flying in from Portland to DC arriving on Jan 3rd until the 6th alone. I haven't made a dime since the end of March because of covid. I put this to one of my credit cards because I just feel the need to be there. I've never been to a Trump rally or to DC but my president has called on us to be there. Any help to pay for the trip would be greatly appreciated. I do have another bed available in the room as It's just me going. I would be glad to share with a needy patriot. Thanks you for your help to fix this injustice. . . . Male Patriot who has room for an additional patriot (should be another male for safety purposes). Reach out to assess exact financial need.

*Id.*

### 2. Statements offered not for their truth, but for their effect on the listener (Harris)

The government will seek to introduce numerous statements made by other individuals in person, when Harris was present or nearby; over electronic communications; and through documents accessed by Harris on his cell phone. The government will lay foundation that Harris was present during these statements. Most of these exhibits will be introduced from videos or

photos captured by Harris on his own cell phone, which is itself sufficient evidence that Harris heard or was aware of these statements.

These statements will be offered not for their truth but for their effect on the listener (Harris) or to prove Harris' knowledge. For example, the government will offer a statement made by law enforcement, captured on Harris' cell phone, on December 21, 2020, during the riot at the Oregon State Capitol. Armored police vehicles are visible in the frame, as are flashing police lights and police sirens. In the video, a police warning can be heard, notifying protestors that they "must leave the Capitol grounds now or you will be subject to arrest under [inaudible] Revised Statute 166025, Disorderly Conduct[.]" *See* Exhibit 599.[1]

Also, the Government intends to introduce three documents accessed by Harris on his cell phone as relevant non-hearsay evidence, not offered for the truth of the contents, but for the effect on the reader (Harris) or to prove his knowledge:

1. Verified Complaint for Declaratory and Injunctive Relief in *Lin Wood, Jr. v. Brad Raffensperger, et al.* filed in the United States District Court for the Northern District of Georgia, accessed on December 19, 2020, *see* Exhibit 633;

2. "The Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee," accessed on December 22, 2020, *see* Exhibit 634; and

3. "Reclaiming a Superpower: Americans Prepare for War," an article accessed on January 5, 2021, *see* Exhibit 632.

### 3. Statements offered not for their truth, but for their effect on the listener (USCP and MPD officers)

The government intends to elicit testimony on police officers' calls for help on January 6, 2021, that the testifying USCP or MPD officer heard over his radio. These calls for help over the

---

[1] See docket entry 60 for additional information on the admissibility of this evidence.

radio will not be for the truth of the matter asserted. Instead, the calls for help affected the listener (the testifying USCP and MPD officers), causing the officer to respond to the location of the officer requesting help over the radio. To the extent the Court finds that these statements are hearsay, the statements fall under at least two exceptions to the hearsay rule, present sense impression under Rule 803(1) and excited utterance under Rule 803(2).

### 4. Statements offered not for their truth, but as context

The government will introduce certain statements by declarants other than the defendant, in videos relevant for other reasons, not for their truth, but as context or irrelevant background. For example, in one video exhibit, an individual says, "Get this journal out of here, get this guy out of here. This guy [inaudible], get him the fuck out of here." A third party asks, "Who?" The individual replies, "This freaking journal with the [inaudible]." Harris, listening to this exchange, responds "Let's throw him over. Throw him over." *See* Exhibit 345. While the initial statement would, on its own, be irrelevant to Harris' case, Harris' subsequent statement in response goes to show his state of mind. Thus, that portion of the conversation provides context to help the Court understand the video, which also contains a statement by Harris.

As another example, in one video exhibit, an individual says, "Hey! Come on man. Be respectful of that. Can't you stand down there?" The camera pans to Harris, who appears to be standing on a statue or elevated area inside the Capitol Rotunda. Harris replies, "We're being tear gassed. I don't know if you noticed." *See* Exhibit 331. While the initial statement would, on its own, be irrelevant to Harris' case, Harris' subsequent statement in response goes to show his state of mind. Thus, that portion of the conversation provides context to help the Court understand the video, which also contains a statement by Harris.

Also, three days after participating in the riot at the Oregon State Capitol on December 21, 2020, Harris took a screenshot of a text exchange with a third party. In the text exchange,

Harris sent a third party an article with the headline, "Arrests made after protestors attempt to enter the Oregon Capitol[.]" In the same text thread, the defendant identified himself—alongside a "smiley-face" emoji—in a video that shows him assaulting a journalist who was present at the Oregon Capitol that day. *See* Exhibit 630.  The government, therefore, does not seek to admit the headline for its truth, but to give context to the statements that Harris makes in response.

### B.        General evidence of the Capitol riot

The government will introduce evidence of the events at the U.S. Capitol on January 6, 2021, even beyond those in the immediate vicinity of the defendant. This evidence will include:

1. An overview U.S. Capitol Police witness, Captain Carneysha Mendoza, who will testify regarding the crowd's initial breaches of the barriers surrounding the U.S. Capitol's restricted area and the crowd's progress in pushing through police lines before ultimately entering the U.S. Capitol itself, as well as law enforcement's hours-long struggle to clear the U.S. Capitol grounds of rioters; and
2. An overview, 16-minute montage of U.S. Capitol Police CCTV footage of the riot, showing the same events.

Harris took photos and videos from the Northwest lawn of the Capitol Grounds beginning at approximately 1:46 p.m., and he left the Capitol Building through the East Rotunda Doors at approximately 3:36 p.m.  However, evidence of the overall riot and its progression that day is relevant to at least four counts.

First, to prove Count One, the government may prove that Harris (or others he aided and abetted) in fact impeded or obstructed an official proceeding—here, the congressional certification of the 2020 Electoral College vote.  18 U.S.C. §§ 1512(c)(2), 2.  Similarly, to prove Count Seven, the government must prove that Harris' disorderly or disruptive conduct did "in fact impede or disrupt the orderly conduct of Government business or official functions."  18

U.S.C. § 1752(a)(2). Thus, to prove those two elements, the government can offer proof that other rioters whom Harris may have aided and abetted ultimately entered into the Capitol building and interfered with or stopped the certification.

Second, to prove Counts Two and Three, the government must prove both that the officers whom Harris interfered with were "engaged in the lawful performance of his/her official duties incident to and during a civil disorder," and that the civil disorder "obstructed, delayed, or adversely affected" either interstate commerce or "any federally protected function." 18 U.S.C. § 231(a)(3). Thus, the government can introduce evidence that the crowd had become a riot as of 1:46 p.m., including evidence of that riot from locations other than where Harris was located. It can also introduce evidence that the riot grew to such a size, and entered such sensitive areas in the Capitol, that it impacted local commerce and affected the protection of the Vice President, which is a federally protected function. *See, e.g.*, *United States v. Nordean*, 579 F. Supp. 3d 28, 55 (D.D.C. 2021) (protecting Vice President and Vice President-elect were federally protected functions); *Grider*, 2022 WL 17829149, at *9 (same).

          Respectfully submitted,

          MATTHEW M. GRAVES
          UNITED STATES ATTORNEY
          D.C. Bar Number 481052

June 9, 2023        By:    /s/ *Laura Hill*
          LAURA E. HILL
          Trial Attorney
          NV Bar No. 13894
          Trial Attorney, Detailee
          175 N Street, NE, 9th Floor
          Washington, D.C. 20002
          (202) 514-7900
          Laura.e.hill@usdoj.gov

          JULIE BESSLER
          Assistant United States Attorney

PA Bar No. 328887  
601 D Street, NW  
Washington, DC 200001  
(202) 809-1747  
Julie.bessler@usdoj.gov